Sanders et al. v. Godley.

---

## SANDERS ET AL. *vs.* GODLEY.

1. Property in the hands of a legatee may be subjected by bill in equity to the payment of the testator's debts, if the assets prove otherwise unsufficient.

2. The nominal plaintiff in a judgment at law is not an indispensable party to a bill filed by the person for whose use it was recovered, to obtain satisfaction of it out of property in the hands of the debtor's legatees; the objection that he was a necessary party cannot be raised for the first time in the Appellate Court.

3. When a bill is filed by a creditor to subject to the satisfaction of the testator's debts certain property in the hands of his legatee, to whom it was bequeathed for life with remainder to her children, the remaindermen are necessary parties to the bill.

4. The service of subpoena on the surviving parent of infant defendants, *for them*, is sufficient, whether they are over or under fourteen years of age.

5. When judgment is recovered against an executor on a debt of the testator, and the creditor comes into equity to obtain satisfaction out of property in the hands of legatees, alleging the insolvency of the executor and his sureties at the time of the rendition of judgment and from that time until his death, the administrator of the executor is not a necessary party to the bill.

6. When a creditor comes into equity to obtain satisfaction of his debt out of property in the hands of his debtor's legatees, all the legatees who are made defendants must contribute their proportion to the satisfaction of the debt; a money decree against two of the defendants jointly, to one of whom slaves were bequeathed for life with remainder to her children, who are also defendants to the bill, is erroneous.

The bill in this case was filed in the Chancery Court of Madison; but the Hon. David G. Ligon, who was then the Chancellor of the Northern Division, having been of counsel, it was transferred to Jefferson & Walker, and was heard before the Hon. W. W. Mason. It is brought to this court by writ of error.

THE bill was filed by Grandin F. Godley against the plaintiffs in error, to obtain satisfaction of a judgment at law against the executor of John B. Fox, deceased, on a debt of the testator, out of certain property in the hands of the defendants, to whom it was bequeathed by said Fox. It alleges that complainant's judgment at law was rendered at the February term, 1841, of the County Court of Madison, in the name of Horner, Blocker & Co. for the use of complainant, against Robert A. High, as executor of said John B. Fox, on a due bill made by Fox to said Horner, Blocker & Co. in 1836; that the amount of said judgment, at the time of its rendition, was $774 99; that previous to the rendition of this judgment, said Fox had departed this life, having made his last will and testament, which was duly admitted to probate in Morgan County on the 26th June, 1837 ; that by said will, among other legacies small in amount, he bequeathed the bulk of his property, after payment of his debts, to Mrs. Sarah Sanders and James T. Kimble, two of the plaintiffs in error, and appointed Robert A. High his executor ; that the property given to said Kimble was bequeathed to him absolutely, consisting mostly of slaves ; that the property bequeathed to Mrs. Sanders, also consisting chiefly of slaves, was limited to her husband as her trustee for her separate use during her life, with remainder to her children ; that High took upon himself the executorship, giving bond and security, and soon afterwards delivered to Mrs. Sanders and said Kimble all the slaves bequeathed to them, or the greater part thereof.

The bill further alleges that, at the date of the rendition of complainant's said judgment, said High was wholly insolvent, and had no property either of his own or the testator's that could be reached by execution ; that the sureties on his bond as executor were also insolvent at that time, and so continued ; that said High continued insolvent until his death; that the other legatees had never received their legacies ; that complain-

ant does not know the names of Mrs. Sanders' children, but prays that she may disclose their names, and that they may then be made parties. The prayer of the bill is, that the property in the hands of the legatees may be subjected· to the satisfaction of complainant's judgment.

Said Kimble, Mrs. Sanders, and Nathaniel Terry as administrator *de bonis non* of said John B. Fox, are made defendants to the bill; and after Mrs. Sanders had answered, giving the names of her children, the bill was amended so as to make them parties. The subpœna on the amended bill was served on Mrs. Sanders, as mother and surviving parent, in behalf of her children, in July, 1842. Another subpœna was afterwards issued, which was served on the children themselves, except Benton Sanders, in May, 1843. The record does not anywhere disclose the ages of the minors, nor does it show the appointment of a guardian *ad litem* for them except by implication. Notice was issued, among others, to William H. T. Browne, as guardian *ad litem* for the minors, to attend a reference ordered before the master, and he acknowledges service as such on the 16th April, 1846. There is also an answer filed by him, as guardian of all the minors, on the 5th May, 1848, and afterwards an acknowledgment by him of service of notice for the taking of depositions.

All the defendants answered the bill, the minors by their guardian *ad litem*, William H. T. Browne. Mrs. Sanders and Kimble demur for want of equity, for misjoinder of parties, and because complainant's remedy, if any, is at law. The answers and proof fully establish the material allegations of the bill.

At the July term, 1850, the cause was submitted for final decree on the bill, answers, exhibits and proof. The Chancellor held that the complainant was entitled to the relief which he sought, and ordered a reference to the master to ascertain and report to the next term of the court the amount due complainant on his said judgment at law, for principal, interest and costs. At the July term, 1851, the master reported that the principal and interest due on the judgment at law amounted to $1421 86, and that the complainant's solicitor abandoned all claim to the costs of the suit. This report was made on the 21st July, 1851, and was confirmed on the same day. Thereupon the Chancellor decreed "that said Sarah Sanders and James T.

Kimble pay to the complainant the said sum of $1421 86, the sum reported by the master to be due him, with legal interest thereon from the date of the master's report until such payment is made; and in case they fail to make such payment within thirty days from the rising of this court, that then the register issue execution therefor; it is further ordered, that the defendants Sarah Sanders and James T. Kimble pay all cost."

The errors assigned are :

1. In rendering a final decree in the absence of Horner, Blocker & Co., who were necessary parties to the bill ;

2. In rendering a final decree without the children of Mrs. Sanders being properly made parties ;

3. In rendering a final decree in the absence of R. A. High's administrator, who was a necessary party ;

4. In confirming the master's report without requiring it to lie over two days; and in confirming said report, because plaintiffs in error had no notice of the time and place of taking the account on which it is based ;

5. In rendering a final decree in favor of complainant without any proof of the indebtedness of John B. Fox ;

6. In the rendition of the final decree.

BRICKELL & CABANISS, for plaintiffs in error.

D. C. HUMPHREYS and BELSER & RICE, contra.

PHELAN, J.—We do not understand the plaintiffs in error seriously to question the rule of law, that property in the hands of a legatee will be held liable to the payment of the testator's debts, if the assets otherwise prove insufficient. Even if it be denied, we cannot hesitate to pronounce that such is the rule of law; and the answers and proof in this cause clearly make out a case to which that rule is applicable. The debt against the testator is well established; the insolvency of his executor, and of the executor's sureties, is also well established; and the third fact necessary to complete the right to relief, is just as clear, namely : that Mrs. Sanders and Kimble each received more of the property of Fox from the executor, High, than would be sufficient to pay this debt, and the children of Mrs. Sanders a valuable vested remainder in the slaves bequeathed to their mother.

But it is insisted, that Horner, Blocker & Co., the payees in the due bill which Fox gave, and upon which the judgment for the use of Godley was recovered, in the County Court of Madison, in 1841, should have been made parties complainants, because, it is said, they held the legal title to the due bill, and the party holding the legal title must, as a general rule, be made a party in chancery. That is a general rule, but not a universal one.—Story's Eq. Pl. § 153. But, without discussing that question, it is sufficient to observe here, that the objection to a bill for want of proper parties will not be entertained, if made for the first time in this court, unless the case shows the omission of a party whose connection is indispensable to the just and final decision of the matters in controversy.—Woodward v. Wood, 19 Ala. 215; Dias v. Bouchand, 10 Paige 445. Such is not the case here. The case as presented, so far from showing any interest in Horner, Blocker & Co., goes to show the contrary. Godley seeks satisfaction of a judgment rendered *for his use* against the executor of Fox; the legatees of Fox, who are responsible for its payment under the circumstances, do not deny or in any manner question, in the court below, the sole ownership of Godley; they thereby admit that he is sole owner, and will not be allowed to raise that question here, after letting it pass in silence in the court below.

We agree that the children of Mrs. Sanders were necessary parties defendants to this bill, which sought to subject to sale slaves in the possession of their mother in which they had a vested interest, namely : a remainder after her life estate. But the service of the subpoena on their mother for them was a good service, and they were properly before the court, so as to authorize the appointment of a guardian *ad litem*. The third rule of chancery practice (Clay's Digest 612) says : "Subpoenas issuing against infant defendants may be served upon their parents or either of them, if in life, and, in case of death, upon the general guardian of such infants ; and if there is none, then, if the infant is over fourteen years, upon the infant personally, and if under fourteen, then upon such person as may have the maintenance and charge of such infant," &c. This rule means, that, so long as there is a father or mother or general guardian, the service may be upon them, in behalf of infants or minors, whether over or under fourteen years. The subpoenas which

issued and were served on all the infants themselves, except B. Sanders, were, to say the least, unnecessary ; the previous service on their mother was good.

The record shows in this case, that the subpœna required the sheriff to summon the infants, naming them, by their mother and surviving parent; and the case of Hodges v. Wise & Wife, 16 Ala. 509, is a decision in favor of the sufficiency of such a service. The case of Johnson v. Hainesworth, 6 Ala. 443, does not show that a subpœna was served on the mother *for the infants ;* and, as both were parties defendants to the bill, it was held not to be sufficient that a subpœna had been served on the mother only. The two cases do not conflict, but the language of the court in the latter case, as to the meaning of the third rule of chancery practice, does not agree, as will be observed, with what we conceive to be the true construction.

It was not necessary to make the administrator of High a party, even if there was one. The liability of High could not be increased or diminished by the decree in this case, go as it might. That was fixed by the judgment against him. Besides, he is shown to have been utterly insolvent at the date of the judgment, and to have died so shortly afterwards. If he had made a payment, these defendants could show that, without his administrator being made a party.

But the money decree against Mrs. Sanders and Kimble jointly, for the amount of the judgment, cannot be supported under the facts of this case. If there had been no other legatees, who received property or effects of the testator, parties to the bill, inasmuch as Mrs. Sanders and Kimble were each shown to have received more property than would satisfy the debt, the decree might have been supported, and they left to adjust between themselves the question of contribution. And in such a case, as no reference to the master would have been actually necessary to ascertain the amount for which a decree should be rendered, since the record of the judgment furnished data and proof upon which the chancellor could safely act without the aid of the master, the questions raised as to the report of the master and the confirmation of that report might have been regarded as unimportant. But there is this important feature in the case, which has been entirely overlooked in the decree, and which makes a reference to the master with suitable instructions indis-

pensably necessary to the administration of equal justice in the case : the vested remainder of the children of Mrs. Sanders in the slaves bequeathed to their mother for life, which is a highly valuable interest, must be charged with its proper proportion of this debt. If they were not parties to this bill, and their mother and Kimble should be decreed to pay it, there would be a way open to recover contribution of them ; but being parties, the decree of the court must determine and settle, as well what part they are liable to contribute to the payment of the complainant's demand, as that which falls to the share of the other defendants, each being bound in equity to pay in proportion to the value of the testator's property which they respectively received. This is wholly omitted in the decree rendered.

It follows from what has been said, that a reference to the master was indispensable. The master should be instructed to ascertain and report, 1st, the amount of the debt due from the testator, Fox, to the complainant, with interest to the time of taking the account; 2nd, the amount in value of the property of Fox which Kimble received; if slaves, their number and value ; 3rd, the amount in value of the property of Fox which Mrs. Sanders, or her husband as her trustee, received ; of the slaves, their number and value, and the value of her life interest in them ; 4th, the value of the vested remainder to the children of Mrs. Sanders in the slaves which their mother received, and in which she takes by the will of Fox a life estate : the value of all the property and of the remainder to the children of Mrs. Sanders to be estimated as of the time when the property was received by the respective legatees ; 5th, to ascertain and state from the foregoing data what portion of complainant's demand each of the respective parties defendants should pay.

Upon the coming in of this report, the chancellor will render a decree in favor of complainant against the respective parties, for their several portions as aforesaid, and allow some short delay for the payment of the same ; and shall further decree, that, if the whole amount be not paid by such time, execution may issue against any or either of said parties defendants, to the extent of the property respectively received by them, until the whole is paid.

It follows from what has been said, that the decree below

must be reversed, and the cause remanded, that the chancellor may proceed in conformity with the foregoing views.

LIGON, J., having been of counsel, did not sit in this case.